UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-9140-GW-AGRx | Date | June 28, 2023 |
|---|---|---|---|
| Title | *Brian Smith, et al. v. VCA, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**     IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT [86]; and PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS [88]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motions [86, 88] set for hearing on June 29, 2023 at 11:30 a.m.

:

Initials of Preparer    JG

<u>*Brian Smith et al. v. VCA, Inc. et al.*</u>; Case No. 2:21-cv-09140-GW-(AGRx)
Tentative Ruling on Unopposed Motion for Final Approval of Class Action Settlement Agreement and Motion for Award of Attorneys' Fees, Costs, and Service Payments

### I.    Background

Plaintiffs Brian Smith, Jacqueline Mooney, Angela Bakanas, and Matthew Colon (collectively "Plaintiffs"), individually and on behalf of all participants in the VCA, Inc. Salary Savings Plan (the "Plan"), brought this action against Defendants VCA, Inc. ("VCA"), the Plan Committee for the VCA, Inc. Salary Savings Plan, and John and Jane Does 1-50 (collectively "Defendants"). Plaintiffs allege Defendants breached their fiduciary duties in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et. seq. ("ERISA"), by allowing unreasonable and excessive recordkeeping and administrative fees to be charged to Plaintiffs. *See* Complaint ("Compl."), ECF No. 1 ¶ 1. Plaintiffs state that Defendants were responsible for monitoring plan costs, such as recordkeeping and administration costs, to ensure that such costs are fair, reasonable, and appropriate. Between November 2015 and July 2020, according to Plaintiffs, Defendants breached their fiduciary duties by allowing Plaintiffs to pay excessive fees compared to similarly sized retirement plans.

Plaintiffs filed this class action lawsuit on November 22, 2021. *See* Compl. Defendant VCA filed a Motion to Dismiss the litigation on February 17, 2022. ECF No. 40. This Court denied the Motion. ECF Nos. 55, 56. Defendant VCA then filed an Answer to the Complaint. ECF No. 57. In the midst of discovery, the parties discussed the prospect of early resolution and agreed to a mediation session set for November 9, 2022. *See* Memorandum in Support of Motion for Final Approval of Class Action Settlement Agreement ("Mot."), ECF No. 87 at 2. The parties engaged in a full-day mediation with David Geronemus, during which they reached an agreement in principle to settle the case. *Id.* at 2-3. Specifically, the parties agreed to a Qualified Settlement Fund in the amount of $1,500,000. *Id.* The parties then engaged in weeks of follow-on discussions and negotiations to finalize the terms of settlement. *Id.* They executed the Settlement Agreement on January 30, 2023. *Id.*

Plaintiffs moved for preliminary approval of the Settlement Agreement on January 31, 2023. ECF Nos. 74, 75. The Court issued a tentative ruling on Plaintiffs' motion requesting clarification on certain issues. ECF No. 81. The Court and the parties conferred at the February

1

16, 2023 motion hearing, *see* ECF No. 82, after which Plaintiffs submitted a modified proposed order, ECF No. 83.  The Court entered the order and granted preliminary approval of the Settlement Agreement on February 22, 2023.  ECF No. 85.

Plaintiffs now move the Court for final approval of the Settlement Agreement.  Plaintiffs also move for attorneys' fees, costs, and Class Representatives' service payments.  *See* Memorandum in Support of Motion for Award of Attorneys' Fees, Costs, and Service Payments ("Fee Mot."), ECF No. 89.  Both motions are unopposed.

## II. Discussion

### A. Terms of the Settlement

The Settlement Class is defined as: "all persons who participated in the Plan at any time during the period from November 22, 2015 through July 24, 2020, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the period from November 22, 2015 through July 24, 2020."  Settlement Agreement ("SA"), ECF No. 75-1, ¶ 1.44.

The Settlement provides for a non-reversionary Qualified Settlement Fund in the amount of $1,500,000.  *Id.* ¶¶ 1.24, 1.33.  The exact amount to be paid to each Class Member from the Net Settlement Amount is based upon the following calculation: (1) Calculate the sum of each Class Member's account balances for each year of the Class Period based on the data as of the date above.  This amount shall be that Class member's "Balance"; (2) Sum the Balance for all Class Members; (3) Allocate each Class Member a share of the Net Settlement Amount in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members, *i.e.*, where the numerator is the Class Member's Balance and the denominator is the sum of all Class Members' Balances. *Id.*, Ex. B.  The amounts resulting from this initial calculation shall be known as the "Preliminary Entitlement Amount."  Class Members who are entitled to a distribution of less than $10.00 will receive a distribution of $10.00 (the "De Minimis Amount") from the Net Settlement Amount. The Settlement Administrator shall progressively increase Class Members' payments falling below the De Minimis Amount until the lowest participating Class Member award is the De Minimis Amount.  The resulting calculation shall be the "Final Entitlement Amount" for each Settlement Class Member. The sum of the "Final Entitlement Amount" for each remaining Settlement Class Member must equal the dollar amount

2

of the Net Settlement Amount. *Id.*

Class Members with an individual investment account in the Mars Veterinary Health 401(k) Savings Plan ("Mars Plan") with a balance greater than $0 as of January 1, 2023 will receive their Settlement payment via a direct deposit into their Mars Plan account. SA, Ex. B. All other Class Members will be paid directly by the Settlement Administrator by check, valid for 180 days from the date of issue. *Id.*

The Settlement also provides for payment of any attorneys' fees and costs, as well as an award of $3,000 as service payments to each of the four named class representatives. Mot. at 6. As noted, Plaintiffs have filed a separate motion for final approval of attorneys' fees, costs, and Class Representatives' service payments. Class Counsel seeks attorneys' fees in the amount of one-third of the Qualified Settlement Fund. The administrative expenses will also be paid from the Qualified Settlement Fund. The parties selected Analytics Consulting ("Analytics") as the administrator, which estimates that the total administration and notice charges in this matter will be between $45,000 and $65,000. Mot. at 5.

The Settlement will be subject to review by the Independent Fiduciary, which shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation," Department of Labor, 68 Fed. Reg. 75,632, as amended.

In exchange for these benefits, all Class Members will release Defendants and other Released Parties from the claims asserted in this lawsuit and other Released Claims, as well as claims, liability, attorneys' fees, and expenses arising from the allocation of the Settlement amount. SA ¶¶ 1.35, 1.36, 3.1.5, Article 7.

**B. Continued Certification of the Class for Settlement Purposes**

The Court previously considered the appropriate Rule 23 factors in preliminarily certifying the Class on February 22, 2023. *See* ECF No. 85. Nothing in the time since the preliminary certification of the Class for settlement purposes suggests that the Class should be decertified. The Court now makes final the certification (for settlement purposes) of that class for the reasons addressed in connection with the preliminary approval proceedings. In particular, the Court's tentative ruling on Plaintiffs' motion for preliminary approval sought clarification regarding Plaintiffs' request to certify a class under Federal Rule of Civil Procedure 23(b)(1). *See* ECF No. 81 at 5-6. Under that subsection, a class action may be maintained if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

>(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

The Court is satisfied that Rule 23(b)(1) certification is appropriate in this ERISA action because absent class treatment, the approximately 24,000 Class Members "could individually file suit for damages arising from the same conduct," which would "create a risk of 'inconsistent and varying' adjudications, resulting in 'incompatible standards of conduct' for Defendants." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (citation omitted). Indeed, "[m]ost ERISA class action cases are certified under Rule 23(b)(1)." *Id.*; *see also* 2 Newberg and Rubenstein on Class Actions § 4:7 (6th ed.) ("ERISA cases have become a primary form of Rule 23(b)(1)(A) class actions.").

Accordingly, the Court will grant final certification of the Settlement Class.

### C. Notice

For a class judgment to bind an absent class member, Rule 23(e) requires that the absent class members receive adequate notice. *See* Fed. R. Civ. P. 23(e). Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980).

Here, Defendants and Analytics followed the notice plan approved by the Court in its preliminary approval order. Analytics mailed notice to 23,930 Class Members who had an available, valid, and current mailing address. Declaration of Richard W. Simmons, ECF No. 87-2 ¶¶ 15-16. Analytics also emailed notice to 17,862 Class Members who had an available email address. *Id.* ¶ 16. Taking into account returned notices, Analytics represents that it successfully delivered notice to 23,253 Class Members – or 97.2% of the Settlement Class. *Id.* ¶ 18. Analytics also published a copy of the long form notice, as well as relevant litigation filings, on a settlement website. *Id.* ¶ 19. The notice advised Class Members of their right to object to the Settlement at

4

least 30 days prior to the final approval hearing. *Id.* ¶ 2.2.7. There were no objections to the Settlement. *Id.* ¶¶ 10-11. The Court would thus find that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### D. The Merits of the Settlement

#### 1. Legal Standards Governing Settlement

Federal Rule of Civil Procedure Rule 23(e)(2) provides that the Court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). A district court must in its approval order "show not only that 'it has explored [the *Churchill*] factors comprehensively,' but also that

5

the settlement is 'not[ ] the product of collusion among the negotiating parties.'" *Id.* at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

Nevertheless, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (noting "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned" (internal quotation marks omitted)); *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."). While balancing all of these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625. The Court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

    2. *Fairness of the Settlement*

        a. <u>Presumption of Fairness</u>

Generally speaking, courts afford a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Orozco v. Ardent Companies, Inc.*, No. CV 18-2763-GW-(SSX), 2020 WL 10730050, at *5 (C.D. Cal. Feb. 3, 2020).

As the Court noted in its preliminary approval, the settlement was negotiated at arm's length, and neither the process nor the result has any indications of collusion. The settlement was

6

the result of a full-day mediation session with a JAMS mediator experienced in ERISA class actions, as well as weeks of negotiations between the parties in the weeks following. The Court would also note that the parties had begun discovery prior to mediation, and that Defendants produced (and Plaintiffs analyzed) mediation-related discovery to facilitate the negotiations. *See* Motion at 12-13. These efforts suggest a well-researched position going into settlement negotiations. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." (internal quotation omitted)). Accordingly, the Court would afford the settlement the presumption of fairness.

b. Whether the Settlement Is Fair, Adequate, and Reasonable

The Court now turns to the requisite factors pursuant to Federal Rule of Civil Procedure 23(e), addressing each in turn below.

*Strength of the Case*. Plaintiffs assert that while they are confident in the strength of their case, if the case were to proceed, Defendants would vigorously dispute that they breached any fiduciary duties or that Plaintiffs or the Class Members suffered any damages. Although the Court previously found the allegations in the Complaint sufficient to state a claim at the pleading stage, *see* ECF Nos. 55, 56, the merits of Plaintiffs' claims are comparatively untested. Plaintiffs have not yet demonstrated that their claims would survive a summary judgment motion, and the likelihood of prevailing at trial is likewise uncertain. Moreover, even if Plaintiffs did prevail on liability, the range of possible damage awards is variable, particularly because damages computation in ERISA actions is complex and involves significant uncertainty. *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175, 208 (2d Cir. 2021) (remanding for recalculation of damages, noting that "ERISA litigation often presents novel and difficult legal issues"). Thus, this factor weighs in favor of settlement.

*Risk, Expense, Complexity, and Likely Duration of Further Litigation*. "Difficulties and risks of litigating weigh in favor of approving a class settlement." *G. F. v. Contra Costa Cnty.*, No. 13-CV-03667-MEJ, 2015 WL 7571789, at *8 (N.D. Cal. Nov. 25, 2015); *see also Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW-(JEMx), 2020 WL 10055593, at *4 (C.D. Cal. June 22, 2020) ("The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement."). Here, this lawsuit is still in its relatively early

stages. Absent settlement, the case could continue before this Court and potentially on appeal for quite some time. A lengthy litigation process would increase costs, and attorneys' fees would take up a substantial portion of any recovery amount. Moreover, as an ERISA action, this case is complex and would likely require the parties to engage in substantial expert discovery, further increasing costs. Thus, this factor weighs in favor of approving the settlement.

*Risk of Maintaining a Class Action Status Throughout Trial*. Although the Court believes its decision to preliminarily certify the Class was justified, Defendants could appeal the certification ruling or seek decertification; thus, there is "no guarantee that further developments in the case would not have caused consideration anew of that conclusion." *Elkies*, 2020 WL 10055593, at *5. But in the absence of any indicia that the Class may be decertified, the Court would conclude that this factor is neutral at worst.

*Amount Offered in the Settlement*. "Basic to [the process of deciding whether a proposed compromise is fair and equitable] in every instance . . . is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965. *But see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." (internal citation omitted)).

Here, Plaintiffs estimate that the maximum damages obtainable at trial would be approximately $5-6 million. The Qualified Settlement Fund is $1.5 million – or at least 25% of the estimated maximum. Removing the requested attorneys' fees and costs, as well as enhancement awards for Class Representatives, the Court estimates the Net Settlement Amount to be $923,050 – or approximately 18.4% of the projected maximum. *See* ECF No. 81 at 8 n.3. Assuming the accuracy of those figures, the Settlement is considerable in comparison to other amounts achieved by way of settlements in class cases this Court has handled. The award also reflects the risks posed by additional litigation and any delay that may have been encountered while obtaining payments after a trial. And again, there have been no objections to the Settlement

amount. As a result, the Court believes that the amount offered in settlement reflects a fair compromise and supports settlement.

*Extent of Discovery Completed and the Stage of the Proceedings.* Although discovery has begun, this case is still in its early stages. However, Plaintiffs asserts that the discovery that was conducted was sufficient to convince Defendants to settle. Likewise, Plaintiffs received and analyzed mediation-related discovery, which informed their decision to settle. On balance, this factor is relatively neutral.

*Experience and Views of Counsel.* "In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Elkies*, 2020 WL 10055593, at *6. Here, Class Counsel – who are experienced in class action litigation – consider the settlement to be fair, adequate, and reasonable, and this factor weighs in favor of granting approval.

*Presence of a Governmental Participant.* Because no governmental entity participated in the settlement of the case, this factor is neutral. *See id.*

*Reaction of the Members of the Class to the Proposed Settlement.* "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, because no individuals objected to the Settlement, this factor strongly supports approving the Settlement.

*Adequate Representation of the Class (Rule 23(e)(2)(A)).* The Court would conclude that both Plaintiffs and Class Counsel adequately represented the Class through the pleadings, Defendants' motion to dismiss, mediation and subsequent settlement discussions, and preliminary and final approval of the Class Settlement – resulting in a settlement that achieves substantial and immediate benefit to the Class Members who might otherwise face risk and difficulty in obtaining relief. The Court would thus conclude, as it did in its order granting preliminary approval, that Plaintiffs and their counsel have adequately represented the Class Members and their interests.

*Arm's Length Negotiation.* As discussed above, the Court is persuaded that the proposed Settlement was negotiated at arm's length and that neither the process nor the result has any indications of collusion.

*Adequate Relief for the Class (Rule 23(e)(2)(C)).* The Court has already considered above "the costs, risks, and delay of trial and appeal." "With respect to 'the effectiveness of any proposed

method of distributing relief to the class, including the method of processing class-member claims,'" the Class Members will not need to affirmatively submit a claim and will automatically receive a direct deposit into their Mars Plan (if they have one with a positive balance), or else will be mailed a check. *Elkies*, 2020 WL 10055593, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(C)); *see also* SA, Ex. B. The Settlement is also non-reversionary. SA ¶ 1.24. Moreover, the terms of the proposed award of attorneys' fees will be discussed further in connection with the Court's consideration of the attorneys' fees motion, *infra*. For purposes of Settlement approval, however, there is nothing glaring in the settlement insofar as attorneys' fees are concerned that causes the Court to pause in giving its approval. There is nothing here to trouble the Court in connection with a determination that the Settlement is fair, adequate, and reasonable.

*Equitable Treatment of Class Members (Rule 23(e)(2)(D))*. Under the Settlement Agreement, all Class Members are entitled to their respective share of the Settlement Funds in accordance with the Plan of Allocation, as previously discussed. *See* SA, Ex. B. A settlement generally "does not improperly provide preferential treatment to any class member" when the recovery for each class member is "based on the specific harms that class member experienced." *Sherman v. CLP Res., Inc.*, No. CV 12-11037-GW-(PLAx), 2020 WL 2790098, at *10 (C.D. Cal. Jan. 30, 2020). The only plaintiffs who will be treated differently here are the named Plaintiffs receiving the service payment. Thus, this factor weighs in favor of granting final approval.

### E.  Attorneys' Fees, Costs, and Service Awards

Plaintiffs' counsel moves for approval of their request for $500,000 in attorneys' fees (representing 33⅓ percent of the Settlement Fund), reimbursement of $50,000 in costs, and $12,000 in service payments ($3,000 to each of the four Class Representatives).

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of [its] litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

In awarding fees in connection with a common fund, courts generally use either a percentage method or a "lodestar" method, but in the Ninth Circuit, use of the percentage method

10

in common fund cases appears to be dominant. *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272. The advantages of using the percentage method have been described thoroughly by other courts, and need not be repeated here. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method). The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund. *See Paul, Johnson*, 886 F.2d at 271-72.

There is no question that Plaintiffs' counsel should benefit from the common-fund doctrine here.[1] Counsel took up a case, on contingency, thereby sacrificing time that could have been spent on other matters. Counsel achieved a respectable monetary result in this case, with no possibility of reversion to Defendants. Certainly, the result achieved for the Class is deserving of some measure of reward.

However, Plaintiffs' counsel requests a fee award above the Ninth Circuit benchmark of 25%. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*en banc*). This is a benchmark that this Court, in particular, almost always adheres to in cases where there is little active litigation pre-settlement. Specifically, Counsel seeks a 33.3% percentage-of-recovery fee, amounting to $500,000. Counsel reports a lodestar figure of $444,946 for purposes of a "cross-check," meaning that a positive 1.12 multiplier would be necessary in order to reach the requested $500,000 fee award.[2] This speaks to the value Plaintiffs and their counsel were able to extract from this case without needing to engage in lengthy and costly litigation. Moreover, the Court has received no objections from the Class, including with respect to this fee request, the anticipation of which was revealed in the class notice.

However, this Court typically reserves above-benchmark fee awards for cases involving

---

[1] The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50.

[2] While the memorandum in support of Plaintiffs' fee motion reports a lodestar figure of $444,946 (reflecting 570 hours of work on the case), *see* Fee Mot. at 10-11, the supporting attorney declaration reports a lodestar figure of $449,946 (reflecting 571.9 hours of work on the case), *see* Declaration of Erich P. Schork ("Schork Decl."), ECF No. 89-1, ¶ 19. Counsel may clarify this discrepancy at the hearing.

11

more litigation than was involved here or that is otherwise extraordinary in some fashion.[3] Neither of those considerations apply here. The Court would therefore be inclined to award Plaintiffs' counsel the lodestar figure of $444,946 which is above the benchmark 25%, *i.e.* $375,000.

Counsel also requests a costs/expenses award in the amount of $50,000. *See* Fee Mot. at 12. There does not appear to be any reason the requested costs should not be reimbursed. The compensable expenses represent filing fees, travel, electronic research, mediation and expert fees, attorney service fees, and postage and shipping. *See* Schork Decl. ¶ 30; Declaration of Andrew W. Ferich, ECF No. 89-2, ¶ 28. Such expenses are reasonably incurred in class litigation and represent services that are, in this Court's experience, customarily billed to clients. And, again, the Court received no objections. The Court would therefore award the full $50,000 in costs/expenses requested.

Finally, the fee motion also asks for a service payment of $3,000 to each of the four Class Representatives, for a total of $12,000. Plaintiffs' intent to seek this amount was disclosed in the notice sent out to the Class, and, again, there were no objections to the Settlement (or to any of the proposed/requested disbursements from the Settlement amount).

The decision whether to award an incentive payment to a class representative, and the size of that award, is entirely within the trial court's discretion. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458, 462. The criteria courts may consider in determining whether to make an incentive award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (S.D. Cal. 1995).

The named Plaintiffs here took on the financial risk of being held liable for any costs awarded to Defendants. Plaintiffs also represent they "spent substantial time" (although they do not specify how much) "and effort communicating with Class Counsel regarding the allegations at issue, locating and providing documentation to Class Counsel, keeping apprised of the advancement of the litigation, and reviewing and approving the Settlement." Fee Mot. at 13. In view of these efforts, the service payment of $3,000 to each Class Representative may be found

---

[3] Indeed, as noted *supra*, the settlement in this matter was reached relatively early in the litigation.

reasonable.[4] Notably, the $3,000 figure is below what is commonly granted by courts. *See Pauley v. CF Ent.*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020) ("The range of acceptable enhancement payments is discretionary, but a $5,000 payment is presumptively reasonable." (internal quotation omitted)); *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *13 (N.D. Cal. Aug. 4, 2015) (awarding $5,000 to some class representatives and $10,000 to class representatives who were current employees during the litigation and faced retaliation), *aff'd*, 728 F. App'x 671 (9th Cir. 2018*); Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (collecting cases).

In sum, the Court would grant the Motion for Award of Attorneys' Fees, Costs, and Service Payments, but with a reduction in the amount requested for attorneys' fees as set forth above and a question as to the number of named plaintiffs receiving a service award..

### III. Conclusion

Based on the foregoing discussion, the Court would **GRANT**: (1) the Motion for Final Approval of Class Action Settlement Agreement, and (2) the Motion for Award of Attorneys' Fees, Costs, and Service Payments in amounts to be determined at the hearing.

---

[4] The Court has a question as to why it was necessary to have four named plaintiffs in this action, as opposed to a lesser number.